# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 13-554

**OBEY FINANCIAL GROUP, INC.**

**VERSUS**

**ARCHIE BLUE, JR., ET AL.**

## CONSOLIDATED WITH

## 13-731

**OBEY FINANCIAL GROUP, INC.**

**VERSUS**

**ARCHIE BLUE, JR., ET AL.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 238,202
HONORABLE HARRY F. RANDOW, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**MARC T. AMY**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Marc T. Amy, and Billy Howard Ezell, Judges.

**REVERSED. EXCEPTION OF LACK OF SUBJECT MATTER JURISDICTION SUSTAINED. MOTION TO STAY PENDING ARBITRATION GRANTED.**

**John D. Ryland**
**Provosty, Sadler, deLaunay, Fiorenza & Sobel**
**Post Office Drawer 1791**
**Alexandria, LA   71309-1791**
**(318) 445-3631**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Stone Street Capital, LLC**
    **Stone Street Financial, Inc.**
    **Maple Life Financial, Inc.**

**Robert J. David, Jr.**
**Post Office Drawer 51268**
**Lafayette, LA   70505-1268**
**(337) 269-0052**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Nation Union Fire Insurance Company of Pittsburgh**

**Gregory Engelsman**
**Bolen, Parker & Brenner, LTD.**
**Post Office Box 11590**
**Alexandria, LA   71315-1590**
**(318) 445-8236**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Sydney Grider**

**Ryan E. Johnson**
**Jones Walker, LLP**
**8555 United Plaza Boulevard, 5th Floor**
**Baton Rouge, LA   70809-7000**
**(225) 248-2000**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Transamerica Financial Advisors, Inc.**

**Michael J. Floyd**
**Gold, Weems, Bruser, Sues & Rundell**
**Post Office Box 6118**
**Alexandria, LA   71307**
**(318) 445-6471**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Obey Financial Group, Inc.**

**Archie Blue, Jr.**
**508 Highpoint Drive**
**Alexandria, LA   71303**
**IN PROPER PERSON**

**AMY, Judge.**

With the alleged assistance of a financial advisor, a casino jackpot winner assigned a number of his annual installment payments to a company in exchange for immediate payment. A creditor of the jackpot winner filed this matter against the investment firm of the financial advisor alleging a breach of fiduciary duty owed to the jackpot winner. The defendant investment firm filed an exception of lack of subject matter jurisdiction in light of an arbitration clause in the client agreement entered into between the financial advisor and the jackpot winner. The trial court denied the exception of lack of subject matter jurisdiction, but sustained exceptions of prescription and peremption upon finding that the plaintiff's oblique action did not relate back to initial petitions. The plaintiff and the defendant investment firm seek review in this consolidated matter. For the following reasons, we reverse the underlying ruling and sustain the exception of lack of subject matter jurisdiction. We also grant the motion to stay pending arbitration.

### Factual and Procedural Background

Upon winning a multi-million dollar casino jackpot in 1997, Archie Blue accepted a twenty-year annual payout option. Thereafter, in 2006, Mr. Blue sought the assistance of Sydney Grider, an investment advisor with Transamerica Financial Advisors, Inc. (TFA), and established an account with the company. As set forth below, the client agreement confected pursuant to that relationship included an arbitration clause. In April 2006 and July 2007, and with the alleged assistance of Mr. Grider, Mr. Blue contracted with Stone Street Capital, Inc. for the sale of a number of his future annual payments from the casino winnings.

This suit was filed by Obey Financial Group, Inc., in April 2010 in its attempt to collect on a 2007 judgment it obtained against Mr. Blue in the Ninth

Judicial District Court. By its "Petition in a Revocatory Action[,]" Obey prayed that Mr. Blue's 2007 assignment of three of his future annual payments be declared a nullity. It named Mr. Blue, Mr. Grider, and an alleged successor in interest to Stone Street as defendants. Obey maintained its prayer in several supplemental petitions, but modified the entities named as defendants.

In a March 2012 fourth amended and restated petition and in a August 2012 fifth amended and restated petition, Obey named TFA as a defendant. Therein, Obey alleged that Mr. Grider was an employee of TFA at the time "he arranged" for the April 2006 and July 2007 sales of Mr. Blue's future annual payments. In addition to its continued prayer regarding the nullity of the second sale of future installments, Obey alleged that Mr. Grider's conduct was a breach of the fiduciary duty owed to Mr. Blue. It asserted that the breach caused Mr. Blue loss of income and increased his insolvency. Obey sought damages for that breach of fiduciary duty in order to satisfy Mr. Blue's indebtedness to Obey.

In response, TFA filed an exception of lack of subject matter jurisdiction and related motion to stay pending arbitration asserting that Obey's petition, at least to the oblique action against it, must be arbitrated subject to its account agreement with Mr. Blue.

TFA also urged alternative exceptions of prescription and peremption and no cause of action. According to TFA's pleading, it advanced the pleadings "on the grounds that the plaintiff's oblique action has prescribed or perempted under Louisiana Civil Code Article 2041[1] and because the Amended Petition fails to

---

[1] Louisiana Civil Code Article 2041 provides that: "The action of the obligee must be brought within one year from the time he learned or should have learned of the act, or the result of the failure to act, of the obligor that the obligee seeks to annul, but never after three years from the date of that act or result."

state [a] claim for breach of fiduciary duty, the underlying claims the plaintiff attempts to assert obliquely against TFA." TFA urged in an appended footnote that it "asserts these exceptions in the alternative, only in the event that the Court determines that arbitration is not required." It further stated that: "TFA does not, by asserting these exceptions, waive or in any way concede that the Court has subject matter jurisdiction over the claims against TFA or the enforceability of the arbitration provision at issue."

Following a hearing, the trial court denied TFA's exception of lack of subject matter jurisdiction and the related motion to stay. Although it acknowledged the existence of the arbitration agreement, it found that the transaction at issue in the oblique action fell outside of its scope.

However, the trial court sustained TFA's alternative exceptions of prescription and peremption. It noted that the plaintiff's oblique action against TFA was first lodged in the fourth amended and restated petition, more than one year after discovery of, and three years from, the alleged breach of fiduciary duty in May 2007. Thus, under La.Civ.Code art. 2041, the oblique action was found to have both prescribed and perempted in light of the occurrence and discovery of the alleged breach. The trial court rejected Obey's contention that the oblique action of the fourth amended petition "related back" to the filing of the initial petition. Rather, the trial court observed that Book III, Chapter 12[2] of the Louisiana Civil Code provides for both the revocatory action[3] and the oblique action.[4] However,

---

[2] Book III of the Louisiana Civil Code, entitled "Of the Different Modes of Acquiring the Ownership of Things" provides for the revocatory and oblique actions in Chapter 12, Sections 1 and 2, respectively.

[3] Louisiana Civil Code Article 2036, entitled "Act of the obligor that causes or increases his insolvency[,]" provides for the revocatory action as follows:

the trial court explained that the actions are separate and distinct. In the resulting judgment, the trial court dismissed the plaintiff's claims against TFA.

Both parties seek review of the trial court's ruling in this court. TFA files an application for supervisory writs in which it asks for review of the denial of its exception of lack of subject matter jurisdiction. Obey appeals the sustaining of the exceptions of prescription and peremption. Additionally, TFA answers that appeal, urging the correctness of the sustaining of the exceptions and arguing that, even if this court determines that the matter was not prescribed or preempted, it should maintain dismissal of Obey's claims in light of the arbitration agreement. This court consolidated the matters for review.

## Discussion

*Exception of Lack of Subject Matter Jurisdiction*

In light of its foundational nature, we first address TFA's contention that the arbitration provision in the client agreement confected between Mr. Blue and Mr. Grider/TFA is applicable in this case. In light of this argument, TFA asserts that the trial court lacked subject matter jurisdiction and was required to grant its motion to stay proceedings pending arbitration. However, Obey urges that the trial

---

An obligee has a right to annul an act of the obligor, or the result of a failure to act of the obligor, made or effected after the right of the obligee arose, that causes or increases the obligor's insolvency.

[4] The oblique action, wherein a creditor exercises a right to belonging to the debtor in the debtor's name, is governed by La.Civ.Code art. 2044. *Louisiana Lift & Equip. v. Eizel*, 33,747 (La.App. 2 Cir. 11/1/00), 770 So.2d 859. Article 2044, entitled "[i]nsolvency by failure to exercise right[,]" provides for the oblique action as follows:

If an obligor causes or increases his insolvency by failing to exercise a right, the obligee may exercise it himself, unless the right is strictly personal to the obligor.

For that purpose, the obligee must join in the suit his obligor and the third person against whom that right is asserted.

4

court correctly ruled that the underlying cause of the breach of fiduciary suit arose outside of the TFA client agreement.

Certainly, arbitration agreements are favored under both federal and state law. *See* 9 U.S.C. §2; La.R.S. 9:4201. In Louisiana, La.R.S. 9:4201 provides that:

> A provision in any written contract to settle by arbitration a controversy thereafter arising out of the contract, or out of the refusal to perform the whole or any part thereof, or an agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

When presented with a motion to stay in the presence of a party's claim of an applicable arbitration agreement, as here, a trial court shall stay the trial after determination "(1) that there is a written arbitration agreement, and (2) the issue is referable to arbitration under that arbitration agreement, as long as the applicant is not in default in proceeding with arbitration." *Coleman v. Jim Walter Homes, Inc.*, 08-1221, p. 5 (La. 3/17/09), 6 So.3d 179, 182; *See also Breaux v. Stewart Enterprises, Inc.*, 04-1706 (La. 10/8/04), 883 So.2d 983.

Obey does not contest, in this case, the presence of a written arbitration agreement in the "TFA One Program Client Agreement" entered into between Mr. Blue and TFA. Rather, it contests the scope of the arbitration agreement and, therefore, whether Mr. Blue consented to arbitrate the alleged tort of breach of fiduciary duty in Mr. Blue's sale of his future payment installments to Stone Street. Of course, Obey alleges that the sale was facilitated by Mr. Grider.

The TFA client contract, entered into evidence at the hearing on the exception, indicates generally that:

> This agreement ("Agreement") is entered into by and between Transamerica Financial Advisors, Inc. ("TFA"), a registered broker-dealer and registered investment advisor, Sydney Grider, a registered

5

representative of TFA and an independent investment advisor or Investment Advisor Representative of TFA ("Advisor") and Archie Blue, Jr. ("Client").

In setting forth the "Services to Be Rendered," the agreement provides that:

Advisor will assist Client to determine if the TFA One Program ("Program") is suitable for the Client. Client will furnish Advisor with complete and accurate information regarding Client's current financial situation, including his/her investment goals and objectives, to enable Advisor to complete a questionnaire. If the Program is deemed to be suitable for the Client, Advisor will utilize his/her preferred asset allocation techniques to develop an individualized investment strategy for Client, which will be based upon, among other things, Client's investment objectives, risk tolerance and time horizon. Client acknowledges that it is Client's responsibility to provide Advisor with updated information, as necessary, and that Advisor, TFA and all other persons affiliated with Advisor and/or TFA have the right to rely on such information. Advisor will be available to Client on an ongoing basis to receive deposit and withdrawal instructions and to ascertain any changes in the Client's financial circumstances and/or investment objectives.

By executing this Agreement, Client is hereby opening a TFA One Account ("Account") through which Client will authorize Advisor to purchase and sell/redeem, at Client's direction, certain securities including, but not limited to, no load and load-waived mutual funds, stocks and bonds.

The minimum account size is $25,000. Client may make additional cash deposits to the account at any time and may withdraw account assets on notice to Advisor.

TFA and Advisor will provide Client with periodic reports, including monthly brokerage statements and detailed quarterly performance reports.

As central to this suit, the arbitration clause, contained within the client agreement, provides:

6

# 12.   ARBITRATION

## (a) Arbitration Disclosure

- ARBITRATION IS FINAL AND BINDING ON THE PARTIES.

- THE PARTIES WAIVE THEIR RIGHT TO SEEK REMEDIES IN COURT, INCLUDING THE RIGHT TO JURY TRIAL.

- PRE-ARBITRATION DISCOVERY IS GENERALLY MORE LIMITED THAN AND DIFFERENT FROM COURT PROCEEDINGS

- THE ARBITRATOR'S AWARD IS NOT REQUIRED TO INCLUDE FACTUAL FINDINGS OR LEGAL REASONING AND ANY PARTY'S RIGHT TO APPEAL OR TO SEEK MODIFICATION OR RULINGS BY THE ARBITRATORS IS STRICTLY LIMITED.

## (b)  Arbitration Requirement
*Any dispute involving Client, TFA and/or Advisor relating to this Agreement that cannot be settled shall be settled as set forth in paragraph (c) below:*

## (c)  Arbitration Agreement
Arbitration.   Mandatory Arbitration.   Any controversy or claim between or among Client, TFA and/or Advisor including but not limited to those arising out of or relating to the Agreement or any related agreements, including any claim based on or arising from an alleged tort, shall be determined by binding arbitration in accordance with the Federal Arbitration Act (or if not applicable, the applicable state law), the rules of Practice and Procedure for the Arbitration of Commercial Disputes of Judicial Arbitration and Mediation Services, Inc. ("JAMS") and the "Special Rules" set forth below.  In the event of any inconsistency, the Special Rules shall control.  Judgment upon any arbitration award may be entered in any court having jurisdiction. Client, TFA and/or Advisor may bring an action, including a summary or expedited proceeding, to compel arbitration of any controversy or claim to which this Agreement applies in any court having jurisdiction over such action.[5]

---

[5] Although of only peripheral interest in this case, we include the arbitration clause's final provision for sake of completeness:

### Special Rules

The arbitration shall be conducted and administered by JAMS who will appoint an arbitrator; if JAMS is unable or legally precluded from the arbitration, the American Arbitration Association will serve.   All arbitration administering hearings will be commenced within 90 days of the demand for arbitration; further the arbitrator shall only,

In its denial of the exception of lack of subject matter jurisdiction, the trial court concluded that:

> [T]he claim Obey seeks to enforce through its oblique action does not arise out of the TFA One Program Client Agreement, and as such, the arbitration clause contained in this agreement is not binding on the parties. The Court is of the opinion that when Mr. Blue sold his payments to Stone Street, this was a separate transaction from that of the investment dealings with TFA. Because this was a separate dealing, to which TFA was not a part of, the TFA agreement, and arbitration clause contained therein, is not binding on Obey. As such, Obey's Exception of Lack of Subject Matter Jurisdiction and its Motion to Stay are denied.

On review, we find no error on an underlying conclusion that Mr. Blue and TFA, through Mr. Grider, executed a valid arbitration clause. Instead, we find error in the trial court's resolution of the second prong of the inquiry, i.e., whether the issue to be resolved is referable to arbitration under the arbitration agreement. While the trial court determined that the transaction(s) between Mr. Blue and Stone Street did not arise from the client agreement with TFA and, therefore, the arbitration agreement was inapplicable, we conclude that such an interpretation incorrectly resolves the case solely by reference to Paragraph (B) of the arbitration agreement.

As seen above, Paragraph (B) dictates that disputes "relating to" the "TFA One Program Client Agreement" that cannot be settled must proceed to arbitration pursuant to Paragraph (C). However, Paragraph (C), independently provides that:

> Any controversy or claim between or among Client, TFA and/or Advisor including but not limited to those arising out of or relating to the Agreement or any related agreements, including any claim based on or arising from an alleged tort, shall be determined by binding arbitration in accordance with the Federal Arbitration Act . . . .

---

upon a showing of cause, be permitted to extend the commencement of such hearing for up to an additional 60 days. Client, TFA and/or Advisor shall have the right to seek ancillary remedies (e.g. temporary restraining order, permanent injunction or other relief) and such action shall not be considered a waiver of such party's right to compel arbitration of other claims arising hereunder.

Pointedly, the language indicates that the arbitration requirement is "not limited to" claims arising out of or relating to "the Agreement." It instead applies to "[a] controversy or claims" between the designated actors, including those claims arising from "related agreements." Further, it is specifically applicable to "any claim based on or arising from an alleged tort[.]" The oblique action advanced by Obey's claim, breach of fiduciary duty, is such a tort claim.

Also, Obey's oblique action, i.e., breach of fiduciary duty, obviously alleges the existence of a fiduciary relationship. It is difficult to conceive of how such a fiduciary relationship existed outside of the very contract on which such a claim could be based. Accordingly, we find that the trial court erred in determining that Obey's oblique action, by which it purportedly advanced Mr. Blue's breach of fiduciary duty claim, is not within the scope of the arbitration clause. Rather, the underlying action involved a claim between Mr. Blue and Mr. Grider/TFA. Furthermore, the claim sounds in tort. Given the specific language of the arbitration clause, it is apparent that the trial court lacked subject matter jurisdiction to consider the matter further.

In finding that the arbitration agreement is applicable, we recognize Obey's contention that the arbitration agreement at issue should be rejected as ambiguous, and therefore unconscionable, under California law. On this point, and in addition to the client agreement, the TFA client contract contains a choice of law provision as follows:

## 11. GOVERNING LAW

This Agreement shall be governed by and construed in accordance with the laws of the State of California (without giving any effect to any principals of conflicts of laws) to the extent that such state law is not preempted by the provisions of any law of the United States,

including, without limitation, the Advisors Act and the rules and regulations of the Securities and Exchange Commission thereunder.

Citing this provision, Obey contends that the California case of *Hartley v. Superior Court*, 196 Cal. App. 4th 1249 (2011), demonstrates that the arbitration clause is ambiguous and should be severed from the TFA client agreement via its severability provision. However, in *Hartley*, the California court considered an arbitration agreement that included language allegedly making the question of the scope of arbitrability one for the arbitration panel. *Id.* Recognizing that such a threshold question is typically one for the trial court, it noted federal jurisprudence indicating that the question can, in fact, be arbitrated. *Id.* (citing *AT&T Technologies, Inc. v. Communications Workers of America* 475 U.S. 643, 106 S.Ct. 1415 (1986)). However, that issue can only be reserved for arbitration by the use of clear and unmistakable evidence. *Id.* In consideration of that "heightened standard," the California Court concluded that the clause was ambiguous as to the selection of the trier of the arbitrability question. *Id.* at 1257. It, therefore, found the plaintiff entitled to a judicial declaration as to the issue of arbitrability.

This case, however, does not involve an ambiguity of the "threshold dispute" of arbitrability. *Id.* at 1253. Instead, that issue has been presented to the trial court and, in turn, this court as reflected by this ruling.

Accordingly, we reverse the trial court's denial of the exception of lack of subject matter jurisdiction and enter judgment sustaining that exception. Furthermore, we enter judgment sustaining TFA's motion to stay proceedings pending arbitration.

10

*Exceptions of Prescription and Peremption*

In light of the above determination, we do not address Obey's claim on appeal that the trial court erred in sustaining TFA's exceptions of prescription and peremption. We recognize TFA's assertion in its application for supervisory writs and in its answer to Obey's appeal that this court should grant its exception of lack of subject matter jurisdiction only in the event of a reversal of the sustaining of the exceptions of prescription and peremption. However, the foundational nature of the exception of lack of subject matter jurisdiction dictates that it be first considered, as we have above. We further note that, in initially setting forth its combined exceptions at the trial court level, TFA explicitly urged the trial court to consider its exceptions of prescription and peremption only in the event that it found no merit in its exception of subject matter jurisdiction.

Finally, and in light of our judgment on the subject matter jurisdiction issue, we specifically do not resolve the question of the appropriate forum for consideration of the timeliness issue. *Parker v. St. Tammany Par. Hosp. Serv. Dist.*, 94-2278 (La.App. 1 Cir. 2/27/96), 670 So.2d 531 (wherein the first circuit determined that an exception of prescription arising from the merits of the underlying controversy being submitted to arbitration must be submitted to the arbitration panel rather than being considered by the trial court), *writ denied*, 96-0805 (La. 5/10/96), 672 So.2d 925.

For these reasons, and without addressing the merits of TFA's exceptions of prescription and peremption, it is necessary to reverse the trial court's sustaining of the exceptions of prescription and peremption. We do so in the judgment rendered below.

**DECREE**

For the foregoing reasons, the judgment of the trial court is reversed in full. Judgment is entered in favor of Transamerica Financial Advisors, Inc. and its exception of lack of subject matter jurisdiction is sustained. Judgment is further entered, granting its motion to stay proceedings in the district court pending arbitration proceedings. Costs of this proceeding are assessed to Obey Financial Group, Inc.

**REVERSED. EXCEPTION OF LACK OF SUBJECT MATTER JURISDICTION SUSTAINED. MOTION TO STAY PENDING ARBITRATION GRANTED.**